```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
```

DANIEL P. GALLIOTTI, & DONALD P. GALLIOTTI,

                  Plaintiffs,          07-cv-6601

            v.                     **DECISION**
                                                     **and ORDER**

```
MICHAEL GREEN, INDIVIDUALLY AND IN HIS
OFFICIAL CAPACITY AS DISTRICT ATTORNEY FOR
MONROE COUNTY; STEFANIE L. GUIDO,
ASSISTANT DISTRICT ATTORNEY, IN HER
OFFICIAL CAPACITY AS AN ASSISTANT DISTRICT
ATTORNEY FOR THE MONROE COUNTY DISTRICT
ATTORNEY'S OFFICE; MONROE COUNTY; NEW YORK
STATE INSURANCE FRAUD BUREAU INVESTIGATOR
MARK WILLIAMS, INDIVIDUALLY AND IN HIS
OFFICIAL CAPACITY,
```

                  Defendants.
_____

## INTRODUCTION

Plaintiffs Daniel Galliotti and Donald Galliotti ("Plaintiffs" or the "Galliottis"), bring this action pursuant to 42 U.S.C. §§ 1983, 1985, 1986 and 1988(b), for false arrest, malicious prosecution, withholding evidence, false statements, conspiracy and failure to supervise. Defendants District Attorney Michael Green ("Green"), Assistant District Attorney Stefanie Guido ("ADA Guido") and Monroe County, move for summary judgement pursuant to Rule 56 of the Federal Rules of Civil Procedure, arguing that the Plaintiffs have failed to produce any evidence that would support their claims.[1]

---

[1] There is no evidence that defendant Mark Williams was ever served with a summons or complaint in this action, and Williams has not appeared. Because time for service has long expired, the claims against Williams are deemed abandoned, and dismissed with prejudice.

For the reasons set forth below, Defendants Michael Green, Stephanie Guido, and Monroe County's motion for summary judgment is granted.

## BACKGROUND

Plaintiffs Daniel Galliotti and Donald Galliotti are brothers who operate an automobile repair shop that was the subject of an investigation by insurance fraud investigators and the New York State Police. The purpose of the investigation was to determine whether or not repair shops were charging insurance companies for repairs they had not performed. As part of the investigation, investigators devised a sting operation and purposefully damaged a car and recorded and marked each damaged part. See Docket #43-2 at 81, Defendants' Exhibit H. The investigators then assessed the amount of damage done to the car, and estimated the cost of repairs that would be necessary to repair the car. The car would then be brought to a repair shop, and once repaired, investigators examined the car to determine whether or not the repair shop had completed all of the repairs for which they had charged.

With respect to the investigation of the Galliottis' repair shop, insurance investigators damaged a vehicle, and determined that it required $3,237.75 for repairs. The car was then brought to the Galliottis' shop for repairs by a purported customer. Id. The Galliottis were shown the insurance assessment indicating that the vehicle required $3,237.75 in repairs. The Galliottis took full payment of $3,237.75 but only completed some of the repairs before returning the car to the customer. Id. at 57-60,

2

Defendants' Exhibit F.  Insurance adjustors examined the car and found that the Galliottis had only repaired parts they were required to replace but did not repair certain parts at all.  Id.  Insurance adjustors found that the repairs made by the Galliottis were worth less than the $3,237.75 paid to them.  Based on the conclusion that the Galliottis had overcharged for the repairs they made, and that they had failed to make all of the repairs as promised, the Monroe County District Attorney's Office decided to seek criminal indictments against the Galliottis for insurance fraud.  Assistant District Attorney Stefanie Guido presented evidence to a Monroe County Grand Jury, which voted to indict the Galliottis.  Id. at 108, Defendants' Exhibit I.  The Galliottis were arrested, and eventually appeared for trial before Monroe County Court Judge John R. Schwartz.

At trial, the Galliottis argued that the repairs they performed had been in accordance with an alternative assessment of damages that they independently determined, based on their own inspection of the vehicle.  According to the Galliottis, they provided a copy of their assessment to the investigator posing as a customer, and/or to the insurance company upon the return of the repaired vehicle, as an attachment to a "Certification of Automobile Repair" form.  Although it is not clear that the assessment was actually attached to the Certification of Automobile Repair form, the assessment did comport with the repairs that were actually made to the vehicle.  Based on this evidence, at the

3

conclusion of the trial, Judge Schwartz dismissed the charges against the Galliottis.

The Plaintiffs then brought the instant action asserting seven causes of action[2] against Defendants Green, ADA Guido and Monroe County, including: (1) a § 1983 claim alleging malicious prosecution & false arrest; (2) a § 1983 claim alleging deprivation of liberty without due process of law by withholding exculpatory evidence and deliberately failing to conduct a constitutionally adequate investigation in connection with the grand jury proceedings; (3) a § 1983 claim alleging a civil rights conspiracy; (4) a § 1983 claim alleging that Defendants conspired together to obstruct justice, with the intent to deny Plaintiffs' equal protection under the law (5) a § 1983 claim alleging that Green failed to properly train and supervise Assistant District Attorneys (6) a § 1983 claim alleging Defendants publicly made "false statements" concerning the Plaintiffs and (7) a § 1983 claim seeking to impose liability on Monroe County pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

---

[2] Plaintiffs' complaint contains several errors with respect to the numbering of the causes of action. For example, the complaint erroneously skips from the third cause of action to the sixth cause of action. It also fails to number one of the causes of action. Additionally, Plaintiffs final cause of action is labeled "fourth cause of action" and is in fact the second "fourth" cause of action set forth in the complaint. For sake of clarity I have renumbered the causes of action in the order they are presented.

4

**DISCUSSION**

**I. Defendants' motion shall be considered as a motion for summary judgement**

Defendants' motion erroneously requests summary judgement pursuant to Rule 12(b)6 rather than Rule 56(c) of the Federal Rules of Civil Procedure. Defendants also failed to submit a statement of undisputed facts as required by Local Rule 56.1 in support of their motion for summary judgement. Despite these errors, it is clear that the Defendants are seeking summary judgement, as the supporting memorandum reveals numerous references to rule 56, sets forth the standard for summary judgement, and states in conclusion that summary judgement should be granted in their favor. Additionally, Defendants submitted testimony, affidavits and depositions in support of their motion for summary judgement.

In their reply brief, Defendants state that their intention was to file a summary judgement motion pursuant to Rule 56 and submit a statement of undisputed facts, and request the court to excuse their typographical error which unintentionally described their motion as being made pursuant to Rule 12(b)(6).

Plaintiffs contend that Defendants' motion is not a summary judgement motion and instead should be treated as a Rule 12(b)6 motion to dismiss. However, Plaintiffs have recognized Defendants' motion as one for summary judgement in their motion requesting an extension of time to respond to the Defendants' motion. See Docket #47-2 at 1. Additionally, Plaintiffs' memorandum in response to Defendants' motion correctly recognized that Defendants could not have procedurally filed a 12(b)6 motion, as Defendants had already

5

filed their answer and engaged in considerable discovery. Plaintiffs' Memorandum of Law at 10 (hereinafter Pl. Mem.). As such, Plaintiffs were well aware of Defendants' intention to move for summary judgement, and I find that Defendants' motion may be properly considered as a motion for summary judgement.

**II. <u>Summary Judgement Standard</u>**

Summary judgment is appropriate pursuant to Rule 56 where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court must view all facts in the light most favorable to the nonmoving party, but "only if there is a 'genuine' dispute as to those facts." <u>Scott v. Harris</u>, 500 U.S. 372, 380-81 (2007). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." <u>Id.</u> at 1776.

A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). However, the nonmoving party may not rely on "[c]onclusory allegations, conjecture, and speculation," <u>Kerzer v. Kingly Mfg.</u>, 156 F.3d 396, 400 (2d Cir. 1998), and must affirmatively "set forth specific facts showing that there is a

6

genuine issue for trial." Fed. R. Civ. P. 56(e). "When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." Gallo v. Prudential Residential Servs., Ltd. P'ship., 22 F.3d 1219, 1224 (2d Cir. 1994) (citing Dister v. Cont'l Group, Inc., 859 F.2d 1108, 1114 (2d Cir. 1998)).

### III.  Claims against Defendants Green and ADA Guido

Plaintiffs allege that Green and ADA Guido are liable for malicious prosecution, false arrest, withholding evidence, false statements, conspiracy to obstruct justice, conspiracy to violate Plaintiffs' civil rights and failing to conduct an adequate investigation.  Additionally, Plaintiffs allege that Green failed to properly train and supervise Assistant District Attorneys under his control.  These claims are barred on the grounds that ADA Guido and Green have absolute prosecutorial immunity, sovereign immunity and by Plaintiffs' failure to state a claim upon which relief may be granted.

#### A.   Standard for determining the applicability of absolute immunity

Absolute immunity protects government officials from individual liability for actions undertaken "in the exercise of their duties." Burns v. Reed, 500 U.S. 478, 486-487, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). Prosecutors are afforded immunity for their conduct in "initiating a prosecution and in presenting the State's case," so long as that conduct is "intimately associated

with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430-431 (1976).

Prosecutorial immunity "cover[s] 'virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." Dory v. Ryan, 25 F.3d 81, 83 (2nd Cir. 1994). "The absolute immunity accorded to government prosecutors encompasses ... all of their activities that can fairly be characterized as closely associated with the conduct of litigation or potential litigation, including presentation of evidence to a grand jury to initiate a prosecution ..., [and] activities in deciding not to do so ..." Barrett v. United States, 798 F.2d 565, 571-572 (2d Cir. 1986) (citing Lee v. Willins, 617 F.2d 320 (2nd Cir. 1980)).

### 1. Plaintiff's claim alleging malicious prosecution and false arrest is barred by prosecutorial immunity

To prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show that their rights were violated under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law. Manganiello v. City of New York, 612 F.3d 149, 161 (2nd Cir. 2010). To establish a malicious prosecution claim under New York law, a plaintiff must prove "(1) the initiation or continuation of a criminal proceeding against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions." Murphy v. Lynn, 118 F.3d 938, 947.

8

In the case at bar, the criminal charges brought against Plaintiffs were terminated in their favor. Plaintiffs argue that Assistant District Attorney Guido lacked probable cause to prosecute and withheld or misrepresented evidence to the grand jury in order to "garner significant press for the [District Attorney's] Office and to justify the $142,000 in grant money paid by New York State." See Third Amended Complaint ¶ 73. However, Plaintiffs fail to present any evidence that the District Attorney's office's prosecution of the Galliottis was motivated to gain good press or by any malice. Furthermore, "absolute immunity extends even to the fabrication of evidence to be presented to a grand jury." Tassone v. County of Onondaga, 1996 WL 307436, at *1 (N.D.N.Y. 1996) (citing Dory, 25 F.3d at 83). The Second Circuit has held that an Assistant District Attorney's alleged act of "conspiring to present falsified evidence to, and to withhold exculpatory evidence from, a grand jury" was "clearly protected by the doctrine of absolute immunity as all are part of his function as an advocate." Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995).

Plaintiffs contend however, that ADA Guido participated in the investigation of the Galliotti brothers' repair shop, and because such activity is not associated with her function as a prosecutor, she should not be afforded prosecutorial immunity. See Pl. Mem. At 16-17 (citing Richards v. City of New York, 1998 U.S. Dist. LEXIS 13675, *6). However, it is undisputed that the investigation was conducted by New York State Police and the

9

Insurance Frauds Bureau.  See Docket #43-2 at 71-79, Defendants' exhibit F.  While The District Attorney's office prosecuted the matter, there is no evidence that it played a role in the investigation.

Additionally, Plaintiffs' claim for false arrest refers specifically to law enforcement officers, and is not directed to Defendants Green or ADA Guido.  Plaintiffs' complaint and supporting memorandum present no evidence or explanation as to how Defendants Green and ADA Guido are liable to Plaintiffs for false arrest.  See Complaint ¶ 71-77.

This court finds that Defendants Green and ADA Guido are afforded prosecutorial immunity in their individual capacity with respect to Plaintiffs' claims alleging malicious prosecution.  The false arrest claim against Green and ADA Guido was not alleged in the complaint and, moreover, the arrest was made by law enforcement officers.

    2.    **Plaintiffs' claim for withholding evidence and failing to conduct an adequate investigation are barred by prosecutorial immunity**.

Plaintiffs second cause of action, alleging that Defendants Green and ADA Guido purposefully withheld favorable evidence and failed to conduct a adequate investigation of the evidence, is also barred by the doctrine of prosecutorial immunity.  A prosecutor's decision as to what evidence to present at trial is protected by prosecutorial immunity.  See Van de Kamp v. Goldstein, 555 U.S. 335, 129 S.Ct. 855, 861 (2009).  The Second Circuit has held "A prosecutor is ... entitled to absolute

10

immunity despite allegations of his ... 'deliberate withholding of exculpatory information.' Although such conduct would be 'reprehensible,' it does not make the prosecutor amenable to a civil suit for damages." Shmueli v. City of New York, 424 F.3d 231, 237 (2d Cir. 2005). Additionally, as mentioned above, Plaintiffs have failed to submit any evidence that ADA Guido or Green were at all involved in the investigation resulting in the indictment and trial of Plaintiffs.

### 3. **Plaintiffs' claim for Supervisory Liability against Green is barred by prosecutorial immunity**

Plaintiffs allege that District Attorney Green had "a custom and policy, or pattern and practice of failing to adequately train and supervise [A]ssistant [D]istrict [A]ttorneys concerning the obligation to disclose exculpatory and impeachment material." Third Amended Complaint ¶ 65-66. Plaintiffs contend that as a result of this failure to properly train, Assistant District Attorneys withheld presentation of favorable evidence to a grand jury which caused Plaintiffs to be maliciously prosecuted. Id. ¶ 98. A supervisor may be held liable for his subordinates actions if "the defendant [Green] participated directly in the alleged constitutional violation ... [or] the defendant [Green] created a policy or custom under which unconstitutional practices occurred." Colon v. Coughlin 58 F.3d 865, 873 (2nd Cir. 1995).

Plaintiffs contend that the District Attorney's office's failure to train or supervise is an administrative act and not a prosecutorial act, therefore their claim of failure to supervise

11

is not barred by prosecutorial immunity. See Pl. Mem. at 15 (citing Hill 45 F.3d 53, 661). It is well established, however, that supervision of an Assistant District Attorney by a District Attorney is a legal function, entitled to absolute immunity. See Van de Kamp, 555 U.S. 335, 129 S.Ct. 855, 861 (2009) ("Prosecutors involved in such supervision or training or information-system management enjoy absolute immunity"). Plaintiffs claim that the District Attorney failed to train Assistant District Attorneys in their obligation to disclose exculpatory evidence. Supervising prosecutors enjoy immunity from a claim involving the legal training or discretion of a prosecutor, as such training is "directly connected with the conduct of the trial." Id. Deciding what evidence to present is intimately associated with the judicial phase of the criminal process. Id. "Supervisory prosecutors are immune in a suit directly attacking their actions related to an individual trial". Id. at 862. As such a claim against District Attorney Green as a supervising prosecutor, for failure to properly train Assistant District Attorneys in their trial technique, is barred by the doctrine of absolute immunity.

Additionally, Plaintiffs have failed to produce any evidence supporting their claim of a failure to supervise or train. Assistant District Attorney Stephanie Guido testified under oath that she received substantial training and was supervised. See Docket #43-2 at 111, Defendants' Exhibit J. Accordingly, I find that there is no question of fact as to whether Assistant District Attorney Guido was properly trained.

12

### B. Claims against Defendants Green and ADA Guido in their official capacities are barred by sovereign immunity

Plaintiffs' claims against Green and ADA Guido in their official capacities are barred by the Eleventh Amendment of the United States Constitution, since Defendants acted on behalf of New York State, which itself is immune from liability under the Eleventh Amendment.  See Lewis v. City of New York, 2008 WL 4307985, at *2 (S.D.N.Y. Sept. 16, 2008).  The Second Circuit has held that "While performing prosecutorial acts, district attorneys [and assistant district attorneys] in New York represent not the county in which they serve but the state."  Baez v. Hennessy, 853 F.2d 73, 76 (2nd Cir. 1988).  As such, claims against District Attorneys and Assistant District Attorneys in their official capacity are constitutionally barred by the Eleventh amendment. See Rodriguez v. Weprin, 116 F.3d 62 (2nd Cir. 1997).

### C. Plaintiffs have failed to establish a false statements or conspiracy claim

#### 1. False Statements

Plaintiffs allege that as a result of ADA Guido and Green's false statements made by them to the press, Plaintiffs were "deprived of his and her [sic] rights under the Fourth and Fourteenth Amendments." Plaintiffs allege that the direct and foreseeable consequences of Defendants' actions caused Plaintiffs to suffer "emotional trauma, loss of privacy and irreparable harm to their reputation and businesses," presumably in violation of their substantive due process rights.

To prove a substantive due process violation, Plaintiffs must show that Defendants' statements deprived them of their liberty interests in conducting a business. See County of Sacramento v. Lewis, 523 U.S. 833, 848 (1998). However, the conduct by a state actor that injures a private party must be "arbitrary, or conscience shocking, in a constitutional sense," to amount to a due-process violation. Collins v. City of Harker Heights, 503 U.S. 115, 128, (1992).

Plaintiffs allege that Defendants Green and Gudio's statements to the press were activities that were not inherently prosecutorial in nature. Plaintiffs allege that both Green and ADA Guido made various false statements to the news media about the investigation and dismissal of the case against the Galliottis. Statements to the press are not protected by absolute immunity, but by qualified, good-faith immunity. See, e.g., Buckley v. Fitzsimmons, 509 U.S. 259, 277-78 (1993); Powers v. Coe, 728 F.2d 97, 103 (2nd Cir. 1984); Jovanovic v. City of New York, 2006 WL 2411541, at *16 (S.D.N.Y. 2006).

Plaintiffs' complaint cites several alleged false statements made to the press by ADA Guido and Green but does not specify exactly which statements violated Plaintiffs' constitutional rights, or even how the statements violated their rights. Plaintiffs seem to base these allegations on a comment Green made to the press following the Plaintiffs' indictment, at which time he stated "Had this not been a sting and had this been a car that was returned to an unsuspecting victim, not only was the insurance

14

company bilked, but there was a serious safety issue." Third Amended Complaint ¶ 56. Plaintiffs also seem to base their allegations on a comment ADA Guido made to the press after the dismissal of the case against the Galliottis, where she stated "[W]e did the investigation. We had reliable information. We still stand by everything we did."

Neither of these statements are arbitrary or shock the conscience on their face. Nor does Plaintiffs' complaint present any factual basis that these statements were knowingly false, that their substantive due process, or other protected rights, were violated by such statements.

Plaintiffs may not simply cite allegations found in their complaint as if they were established facts to support their claims. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Plaintiffs must show specific facts showing there is a genuine issue of fact warranting a trial, which they have failed to do, thus summary judgment is granted dismissing their false statements claim.

### 2. Civil Rights Conspiracy and Conspiracy to Obstruct Justice

Plaintiffs assert two similar conspiracy claims under § 1983, a conspiracy to violate civil rights and a conspiracy to obstruct justice with the intent to deny Plaintiffs equal protection of the law. I construe both claims to be brought under 42 U.S.C. § 1985. See Webb v. Goord, 340 F.3d 105 (2d Cir. 2003) ("The plaintiffs' claim under 42 U.S.C. § 1983, which is styled "Conspiracy to Violate Civil Rights," should actually be stated as a claim under

Section 1985, which applies specifically to conspiracies"), cert. denied, 540 U.S. 1110, (2004).

"In order to maintain an action under § 1985, [plaintiffs] must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end." Webb, 340 F.3d 105, 110 (2d Cir. 2003). A purely conclusory allegation of a meeting of the minds is not enough. See Webb, 340 F.3d at 110 ("The plaintiffs have not alleged, except in the most conclusory fashion, that any such meeting of the minds occurred among any or all of the defendants. Their conspiracy allegation must therefore fail").

In the instant case, Plaintiffs fail to offer anything more than conclusory allegations of such a meeting of the minds. Plaintiffs do not point to any factual support for their allegations. Moreover, because Plaintiffs have failed to establish that they suffered a deprivation of their constitutional rights, they cannot, as a matter of law, state a claim for conspiracy to violate their constitutional rights under § 1985. See Mody v. City of Hoboken, 959 F.2d 461, 466 (3rd Cir. 1992) ("section 1985(3) requires that alleged conspiracy result in injury or loss of federal right")(citing Griffin v. Breckenridge 403 U.S. 88, 103 (1971)).

**IV.    Plaintiffs claims against the County of Monroe**

Plaintiffs allege that the County of Monroe approved of the District Attorney's office's actions, had a policy of allowing employees to make false statements, and created a policy in which

16

Assistant District Attorneys withheld evidence. A county may be held liable for a subordinate's actions if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's offices." <u>Monell v. Department of Social Services</u>, 436 U.S. 658 (1977). As explained above, Defendants' acts did not violate plaintiffs' constitutional rights. Therefore, Defendants' acts could not give rise to any derivative liability of the County, as Plaintiffs have failed to establish Defendants' liability for deprivation of any of Plaintiffs' rights under either 42 U.S.C. § 1983 or § 1988. Moreover, Plaintiffs have failed to submit any evidence in support of their claim that Monroe County adopted a policy or custom that led to any violation of their constitutional rights to support their claim under <u>Monell</u>.

## **CONCLUSION**

For the reasons set forth above, summary judgment is granted in favor of the Defendants and Plaintiffs' complaint is dismissed in its entirety with prejudice.

**ALL OF THE ABOVE IS SO ORDERED.**

S/ Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge

Dated: Rochester, New York
July 19, 2011

17